UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERICKA MICHAL, individually and on
behalf of all others similarly situated,

Plaintiff,

-against-

VIA TRANSPORTATION INC.,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   3/16/2026

25 Civ. 3692 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Plaintiff, Erika Michal, brings this putative class action against Defendant, Via Transportation, Inc. ("Via"), challenging Via's "policy and practice of unlawfully misclassifying its 'drivers' as independent contractors exempt from the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ('FLSA')" and, as a result, failing to "compensate [drivers] for all hours worked" pursuant to the FLSA. Compl. ¶ 1, ECF No. 1. Via moves to compel arbitration and stay the proceedings pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, arguing that the dispute is governed by an arbitration clause in the agreement Michal voluntarily accepted at the outset of her relationship with Nomad Transit LLC ("Nomad"), a wholly-owned subsidiary of Via. *See* Mot., ECF No. 23; Mem. at 1, ECF No. 24; Opp., ECF No. 26; Reply, ECF No. 27.

Michal argues: (1) that she is exempt from arbitration as a transportation worker under § 1 of the FAA; and (2) that, alternatively, the arbitration agreement is unenforceable because it is unconscionable under Washington law. *See generally* Opp. Because the Court cannot make a determination as to whether Michal is exempt from the FAA on this limited record, the Court grants Michal's request for a period of limited discovery, *see* Opp. at 23, to allow the parties to develop and submit evidence addressing whether Via drivers belong to a "class of workers engaged

in foreign or interstate commerce," FAA § 1. *See Aleksanian v. Uber Techs. Inc.*, No. 22-98-CV, 2023 WL 7537627, at *4 (2d Cir. Nov. 14, 2023) (summary order). The Court holds Via's motion in abeyance pending limited discovery.

## BACKGROUND

I.      Factual Background

Nomad, a wholly-owned subsidiary of the rideshare platform Via, "dispatches for-hire vehicles in Washington State for members of the public ('riders') who request such services through an on-demand shared rides platform accessible through Via's mobile applications." Shapiro Decl. ¶¶ 3–4, ECF No. 25. "Nomad licenses Via's technology to connect riders with . . . driver[s] . . . who rent or lease passenger-sized vans and . . . provide transportation services to riders through the Via platform." *Id.* ¶ 5. From about May 2024 to January 2025, Michal was a driver for Nomad. Compl. ¶ 12; Shapiro Decl. ¶¶ 6–7; Michal Decl. ¶ 3, ECF No. 26-2.

At the outset of Michal's relationship with Nomad, she entered into an "Independent Contractor Agreement" (the "Agreement"). Agreement, ECF No. 25-1. Section 21(a), titled "Mutual Agreement to Binding Arbitration," provides that:

> [A]*ny and all disputes, claims, or disagreements*, whether past, present, or future, which arise out of or relate in any way to (i) this [Agreement] and this Arbitration Agreement and any of their respective prior versions (including the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity of the Agreement and the Arbitration Agreement), (ii) the Transportation Services (including any incidents or accidents in connection with such services), (iii) your access to or use of the Via Platform or any other tools or services provided by the Company, (iv) transactions involving you and the Company or payments by or to the Company (including claims regarding compensation or benefits), (v) your relationship with the Company, (vi) any communications, including marketing communications, drafted or distributed by the Company or by any third party on its behalf, and (vii) any other dispute with the Company ("Claims"), *shall be resolved exclusively through binding arbitration between you and the Company, and not by any federal, state, or local court, jury trial, or agency*.

*Id.* § 21(a) (emphasis added).  The provision further provides that "[f]or purposes of this Arbitration Agreement, the terms 'you' and 'Company' also include each entity's respective parents, affiliates, subsidiaries, successors, and assigns, and their respective owners, directors, officers, executives, employees, shareholders, and agents."  *Id.*

The Agreement states that arbitration would be administered by a JAMS administrator who would apply the FAA to any dispute.  *Id.* § 21(d), (h).  The Agreement further states that "to the maximum extent allowed by law, [Michal] and the company can only resolve disputes in an individual capacity" and that she "shall not have the right or authority to bring or pursue claims in arbitration or litigation against [Nomad] on a class, joint, coordinated, collective, or consolidated basis or in a purported representative capacity."  *Id.* § 21(j).

Finally, the Agreement grants the arbitrator "the exclusive authority to . . . resolve any and all Claims, including disputes about the scope, applicability, enforceability, . . . and validity of th[e] Arbitration Agreement, . . . [including] threshold arbitrability questions . . . and any defenses to arbitration."  *Id.* § 21(i).

II.    <u>Legal Framework</u>

The FAA provides that arbitration agreements in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  This provision reflects a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

Under the FAA, a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition any United States district court for an order directing that such "arbitration proceed in the manner provided for in [the arbitration] agreement."  FAA § 4.  The court "must stay proceedings if satisfied that the parties have agreed

3

in writing to arbitrate an issue or issues underlying the district court proceeding." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (citation omitted); *see* FAA § 3. To determine whether parties have agreed to arbitrate a dispute, the Court considers "(1) whether a valid agreement to arbitrate under the contract in question exists and (2) whether the particular dispute in question falls within the scope of that arbitration agreement." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d. 81, 99 (S.D.N.Y. 2015). If both prongs are met, "the role of the court ends and the matter is one for arbitration." *Unique Woodworking, Inc. v. N.Y.C. Dist. Council of Carpenters' Pension Fund*, No. 07 Civ. 1951, 2007 WL 4267632, at *4 (S.D.N.Y. Nov. 30, 2007). Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." FAA § 2.

However, some contracts are exempt from the FAA, "no matter how emphatically they may express a preference for arbitration." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 110 (2019). Section 1 of the FAA, for example, exempts "contracts of employment of seamen, railroad employees, or other class of workers engaged in foreign or interstate commerce." FAA § 1. Therefore, before a court orders arbitration, it "must first know whether the contract itself falls within or beyond the boundaries of [§] 1." *New Prime Inc.*, 586 U.S. at 111. The party "claiming that [§] 1 exempts an arbitration agreement from the FAA's coverage bears the burden of proving that the exemption applies." *Golightly v. Uber Techs, Inc.*, No. 21 Civ. 3005, 2022 WL 22964674, at *4 (S.D.N.Y. Dec. 21, 2022) (*Golightly II*).

The Supreme Court has clarified that the "residual clause" of § 1—i.e., the "class of workers engaged in foreign or interstate commerce"—covers only the employment contracts of "transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112, 114–15, 121 (2001). To qualify as a transportation worker, it is neither necessary nor sufficient to work in the

transportation industry; rather, the class of workers to which a worker belongs "must at least play a direct and 'necessary role in the free flow of goods' across borders." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 451 (2022) (quoting *Circuit City*, 532 U.S. at 121); *see Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 253 (2024) (clarifying that the focus is on "'the *performance* of work,' rather than the industry of the employer" (emphasis in original) (quotation omitted)).

In deciding a motion to compel arbitration, the Court applies "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). The Court "consider[s] all relevant, admissible evidence" and "draw[s] all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted).

## DISCUSSION

Michal argues that she is a member of "a 'class of workers engaged in . . . interstate commerce,' such that the [FAA] cannot be the basis to compel [her] to arbitrate [her] claims." *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 349 (S.D.N.Y. 2021) (quoting FAA § 1); *see* Opp. at 21–23. She states that as a Via driver, she personally "drove passengers to and from a bus/train station and depot, including the Tacoma Dome Amtrak station," "took passengers to go to the train or bus to go to the airport," and "would pick up and drop off passengers at the Inn at Gig Harbor, who were then going to and/or from the Seattle Airport." Opp. at 23 (citing Michal Decl. ¶ 7). She also claims that Via "partners with airports to provide transportation for interstate travelers." *Id.* Via, for its part, provides no countervailing evidence regarding whether the class of transportation workers to which Michal belongs is engaged in interstate commerce. *See generally* Mem., Reply, Shapiro Decl., Abrams Decl., ECF No. 28. Michal requests "a period of limited discovery to allow the [p]arties to develop and submit sufficient evidence for the Court to make a fully-informed

5

determination as to whether [Michal] and [Via's] drivers qualify for the transportation exemption." Opp. at 23; *see id.* at n.33.  The Court grants the request.

Although other circuits have held that nationwide classes of rideshare drivers for companies like Uber and Lyft is not engaged in interstate commerce, the Second Circuit has not decided the issue.  *See Golightly II*, 2022 WL 22964674, at *6–7; *see also Cunningham v. Lyft, Inc.*, 17 F.4th 244, 249–53 (1st Cir. 2021); *Singh v. Uber Techs., Inc.* ("*Singh II*"), 67 F.4th 550, 560 (3d Cir. 2023); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 858 (9th Cir. 2021).  District courts within this Circuit have also considered the question but reached different outcomes.  *See Golightly II*, 2022 WL 22964674, at *6–7; *Islam* 524 F. Supp. 3d at 350.  All courts, however, have analyzed the issue on records more developed than the one here—encompassing, for example, statistics on how often rideshare drivers for the defendant company cross state lines, the percentage of rides taking passengers to or from the airport or other transportation hubs, evidence of agreements the defendant company has with airline companies or airports, or evidence that the defendant company holds or does not hold itself out as a method of interstate transportation.  *See, e.g.*, *Islam* 524 F. Supp. 3d at 348, 352–53; *Haider v. Lyft, Inc.*, No. 20 Civ. 2997, 2021 WL 1226442, at *5 (S.D.N.Y. Mar. 31, 2021); *Capriole*, 7 F.4th at 865; *Golightly II*, 2022 WL 22964674, at *11.[1]

In *Aleksanian v. Uber Techs., Inc.*, the Second Circuit reversed a district court order deciding that Uber drivers did not belong to a class of workers engaged in interstate commerce under FAA § 1 based on allegations in the complaint and incorporated arbitration agreements. 2023 WL 7537627, at *1.  The Second Circuit held that where a complaint "says little about whether the class of transportation workers to which [the plaintiffs] belong are engaged in

---

[1] Via cites several cases from other Circuits, which address the issue with respect to other rideshare companies like Uber and Lyft. *See* Reply at 10–11.  However, those cases do not involve Via.  Although Via may in practice be no different from rideshare companies like Uber and Lyft, it would not be appropriate for the Court to speculate about the fact on this record.

interstate commerce," the issue cannot "be decided on the face of the complaint," and "discovery is required." *Id.* at *3 (cleaned up).  In other words, if, like here, "the complaint and incorporated documents fail to provide an adequate basis for deciding whether [§] 1 of the FAA applies, 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing, with an application of the summary judgment standard to follow.'" *Id.* at *2 (quoting *Singh v. Uber Techs., Inc.*, 939 F.3d 210, 218 (3d Cir. 2019) ("*Singh I*")).  *Aleksanian* ruled as much, even where "Uber provided some potentially relevant information in affidavits submitted in support of its motion to compel arbitration" and the complaint provided "some statistics pertaining to the interstate trips of [the] plaintiffs-appellants." *Id.* at *3.

*Aleksanian* is consistent with the decision in *Golightly v. Uber Techs., Inc.*, No. 21 Civ. 3005, 2021 WL 3539146, at *2–4, 6 (S.D.N.Y. Aug. 11, 2021) ("*Golightly I*"), which allowed limited discovery into whether the FAA applied because the question could not be answered from the face of the complaint.  *See Aleksanian*, 2023 WL 7537627, at *3.  Both *Aleksanian* and *Golightly I* found persuasive the Third Circuit's decision in *Singh I*, which held that where "the pleadings say little about whether the class of transportation workers to which [the plaintiff] belongs are engaged in interstate commerce or sufficiently related work," "discovery must be allowed." *Singh I*, 939 F.3d at 226; *see Aleksanian*, 2023 WL 7537627, at *3.

Courts in other districts have similarly required limited discovery before resolving whether a plaintiff is a member of a class of rideshare workers exempt from the FAA under § 1. *See, e.g.*, *Williams v. Revel Rideshare*, No. 24 Civ. 5701, 2025 WL 1663625, at *4 (E.D.N.Y. June 11, 2025) (ordering limited discovery because the complaint "does not provide any information from which the Court can evaluate the applicability of the residual exemption"); *Gonzalez v. Lyft, Inc.*, No. 19 Civ. 20569, 2021 WL 303024, at *6 (D.N.J. Jan. 29, 2021); *Sienkaniec v. Uber Techs., Inc.*, 401

F. Supp. 3d 870, 870–73 (D. Minn. 2019); *see also Rodriguez v. Inter-Con Sec. Sys., Inc.*, No. 23 Civ. 8355, 2025 WL 1779166, at *1 (E.D.N.Y. June 27, 2025) ("Some limited discovery may assist in the determination of whether security agents at [an airport] are transportation workers.").

Because the complaint does not provide a sufficient factual record on which to evaluate the applicability of FAA' § 1 exemption, the Court orders limited discovery here. To preserve the benefits of arbitration, the breadth of discovery shall be limited to the question of whether the class of workers to which Michal belongs is subject to the § 1 exemption. This inquiry might include:

> [Via's] policies regarding interstate trips; the potential penalties and costs of declining interstate trips; [Via's] revenue from interstate trips; the average number of interstate trips [Via] drivers take over various time periods (such as a week, a month, or a year); the median number of interstate trips for [Via] drivers over various time periods; what percentage of [Via] drivers take interstate trips over various time periods; how often [Via] drivers decline interstate trips; and any other relevant information.

*Aleksanian*, 2023 WL 7537627, at *3.[2] Ordering such discovery is minimally prejudicial to Via because the "requested information will not intrude into the substantive matters that would be subject to arbitration if the Court were to dismiss or stay the federal action in favor of arbitration." *Golightly I*, 2021 WL 3539146, at *4.

## CONCLUSION

Decision on Defendant's motion to compel arbitration at ECF No. 23 is held in abeyance pending the completion of limited discovery consistent with this order. The Court's order staying discovery at ECF No. 31 is lifted only with respect to the limited discovery permitted by this order. The FLSA statute of limitations shall remain tolled during the pendency of the Court's decision

---

[2] "Courts are largely in agreement that the proper geographic scope of the class of workers for purposes of Section 1 is nationwide." *Golightly II*, 2022 WL 22964674, at *7. However, "[d]epending on how a company doing business nationwide organizes its workforce and how and whether the nature of the work performed differs from region to region, it might be more faithful to the FAA exemption to consider the employee as a member of a more local class." *Id.* at *8.

on the motion to compel arbitration.  *See* ECF No. 31.  By **March 30, 2026**, the parties shall file a joint letter proposing a schedule for the completion of the limited discovery and the submission of supplemental briefs on the motion to compel arbitration.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 23.

       SO ORDERED.

Dated: March 16, 2026
      New York, New York

_____
ANALISA TORRES
United States District Judge

9